641 A.2d 1124

NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES,
PLAINTIFF, v. RW AND LW, DEFENDANTS.

IN THE MATTER OF JW, DW AND TW.

IN THE MATTER OF DW.

Superior Court of New Jersey
Chancery Division Family Part
Cape May County

Decided January 20, 1994.

*Eva Pagano,* Deputy Attorney General, for plaintiff.

*Michael Sorenson,* for defendants.

*Janet L. Fayter,* Assistant Deputy Public Defender, Law Guardian for the Minor Children.

BATTEN; J.S.C.

This matter comes before the court by way of complaint by the New Jersey Division of Youth and Family Services, filed pursuant to *N.J.S.A.* 9:6–8.21, *N.J.S.A.* 30:4C:12 and *R.* 5:12–1, alleging parental abuse and neglect of a minor child. The facts, stipulated by all parties, give rise to the novel issue, yet undecided by our reported case law, as to whether parental acquiescence to and tacit encouragement of consensual sexual relations between the thirteen-year-old daughter and her nineteen-year-old paramour constitute abuse and neglect of the minor child as defined by *N.J.S.A.* 9:6–8.21(c)(3) and (c)(4)(b). This court decides the issue in the affirmative.

These are the stipulated facts.

## FACTS

Defendants RW and LW reside with their three children, JW (age fifteen), DW (age fourteen) and TW (age five). DW was born on November 5, 1979. At all times pertinent hereto, the children have remained in the custody, care and supervision of their parents (hereinafter referred to as "Defendants"). The defendants' household is a single family home in which the Defendants and their children have resided for approximately six years.

On September 23, 1993, Defendant LW and her daughter, DW, then age thirteen, appeared before this court, on the record, in the presence of and accompanied by CB, then age nineteen and the

paramour of DW, seeking written approval, by this court, for the marriage of DW and CB. More specifically, DW, her mother and the paramour sought judicial waiver of the minimum age requirements contained in *N.J.S.A.* 37:1–6. In support of this application, Defendant LW submitted a handwritten certification which contained the reasons for the application. Although no complaint was filed, the matter was treated as an emergent application and assigned Docket Number FD–05–287–94D, encaptioned "In the Matter of D.W., a Minor." The certification read as follows:

"9-23-93

Judge Batten,

I[LW] mother of [DW] ask you to give a waiver in permission for [DW] to get married.

[DW] will soon be 14. Her boyfriend is 19. There's a possible a child is involved. As her parent I feel this man is capable of taking care of her and the possible child. If I didn't feel this way I wouldn't be asking for your permission. I strongly feel this way.

I am a Catholic and I believe a child should be born to both parents and its their responsibility to raise this child. [CW] is employed with a High School education. He is also an E.M.T. for ... Rescue Squad.

[DW] will continue to finish High School. My Husband and his parents both support their wishes. And hope to have your support in this matter also.

Thank You,

[LW]

They will also continue to live with my husband and I until [DW] finishes school. While they do this they will be saving for a home."

This court denied the application due to the tender age of DW; that decision was not appealed.

On November 17, 1993, the New Jersey Division of Youth and Family Services (hereinafter referred to as "Plaintiff") filed this action, seeking certain protective relief on behalf of the three children as well as an adjudication that Defendants, as natural parents, had abused and neglected all of the children, generally, and DW, specifically, by virtue of the parents' knowledge, acquiescence and encouragement of, in and for the consensual sexual relationship between DW and her paramour, CB (originally named a party defendant but as to whom the complaint was dismissed on motion of the Plaintiff).

Defendants contest the cause of action generally but do not contest a single factual allegation contained within the filed complaint.[1] The parties further stipulate into this record the filed pleadings and taped proceeding before this court on September 23, 1993. In relevant part, the facts thus stipulated, per the complaint are these:

"3. [RW and LW] ... are the parents of the aforesaid children.

4. At present, the children are in the temporary custody of their parents.

5. While in the care and custody of their parents the aforesaid children were abused and/or neglected in that:

Parents committed or allowed to be committed by an act of sexual abuse against the children.

6. The facts upon which this complaint is based as verified by the accompanying affidavits and documents are as follows:

a. On 10/19/93, the Division received a referral that [DW], age 13, was permitted to live with and have sexual relations with a 19 year old adult, [CB]. [DW's] parents, [LW and RW], allowed [CB] to reside with them at their residence, and share a bedroom with [DW].

b. On 10/22/93, Division worker Gail Geiger spoke with siblings of [DW], [JW], age 15, and [TW], age 12. They verified that [CB] had been residing with them since September, 1993. [JW] informed Division worker that she had to move from the bedroom that she and [DW] shared, so that [CB] could move in. [JW] moved in to [TW's] bedroom, and [TW] slept on the living room couch. [JW] stated that [DW] and her mother have made several trips to the doctor and the clinic because of the possibility that [DW] is pregnant by [CB]. [JW] stated that [CB] has brought movies of a pornographic nature into the home, and he and her father watch them. She also stated that her brother sometimes watches them. [JW] stated that she does not feel it is right that [DW] and [CB] sleep together due to their ages.

c. On 10/22/93, Division worker Gail Geiger met with [DW]. [DW] stated that she and [CB] have been living together since September 1993. She stated that she, [CB] and her mother went to Judge Batten and asked permission for them to marry. He denied their request.

[DW] states that she and [CB] share her bedroom at her parent's house. She stated that she has known [CB] for a long time. She first met him when she was 12 and he was 17. [DW] stated that she just found out that she is not pregnant. She first thought she was pregnant by [CB] in August of this year; then again in

---

[1] Defendants do deny that portion of Paragraph 6(B) of the Complaint that alleges that DW's paramour, CB, brought into the Defendants' home "movies of a pornographic nature"; Plaintiff stipulates, however, that this allegation, even if true, is not determinative of the issue of abuse and neglect.

September. [DW] says that she cannot take birth control pills due to high blood pressure.

d. On 10/22/93 Ms. Geiger and Officer Ditterick of the Township Police Department went to the [Defendants'] residence. Officer Ditterich "Mirandized" the [Defendants], [LW] and [RW] and [DW], and [CB]. Division worker Gail Geiger asked [RW] and [LW] if [CB] lived with them and if they allowed their daughter to have sexual relations with him. They confirmed that [CB] does live there and have sexual relations with their daughter [DW]. Ms. Geiger then asked [CB] if he lives with the [Defendants] and has sexual relations with [DW]. He admitted that he does live there and he and [DW] do have sexual relations. He went on to say that [DW] may be pregnant, and he wanted to be there to help her and take care of her. Ms. Geiger confirmed with [Defendants] that [DW] and [CB] share a bedroom together and have had this arrangement since September, 1993.

[Defendants] stated that they were supportive of this living arrangement, as they felt it was better that [CB] and [DW] live with them, than for them to run away. This way, [DW] could finish school.

Ms. Geiger explained that due to [CB's] age and [DW's] age, they were committing a criminal act by having sexual relations. Ms. Geiger told [Defendants] that their allowing [DW] and [CB] to engage in sexual relations in their home is against the law. Officer Ditterich concurred that this is true. Ms. Geiger told [CB], [DW], and [Defendants] that [CB] should not have sexual relations with [DW], and asked him to discontinue living with them, effective that evening. Ms. Geiger asked him where he would be living. [CB] stated that he would return to his parents' house.

e. On 10/26/93 Ms. Geiger received a phone call from Mr. Maletto, [TW's] guidance counselor. He said [TW] has been to his office several times in past week and that he is very confused and worried that [CB] will go to jail. [TW] told Mr. Maletto that [CB] is still at the house alot, and takes naps on the floor beside [DW's] bed.

f. On 11/1/93 Ms. Geiger spoke with Det. Brogan of the Township Police Department. He said he is concerned that [TW] may be a victim of sexual abuse, as he was making degrading sexual gestures to girls in the neighborhood over the summer.

g. On 11/4/93 Ms. Geiger spoke with Defendant [LW]. Ms. Geiger asked to see family again in order to complete her investigation. Ms. Geiger also asked her whether she had concerns with [TW's] behavior over the summer. Defendant [LW] stated that the family had obtained a lawyer, and she was not willing to discuss anything with Ms. Geiger.

h. On 11/16/93 Division supervisor, Rosemarie Sandberg, was advised by Detective Hayes, of the Prosecutor's Office, that [Defendants] had been charged with Endangering the Welfare of a Child and [CB] had been charged with Sexual Assault.

All of the foregoing stipulations were placed upon the record on January 6, 1994, the trial date; each party then rested. The

ultimate issue of abuse and neglect was thus submitted to this court for summary disposition.

## THE LAW

An "abused or neglected child" is defined, in pertinent part, as follows: " 'Abused or neglected child' means a child less than 18 years of age whose parent or guardian, as herein defined, ... (3 *commits or allows to be committed an act of sexual abuse against the child;* ..." *N.J.S.A.* 9:6–8.21(c)(3) (emphasis added)."

This section of the statute affords a basis for judgment of abuse and neglect only to the extent that the facts as stipulated in the record before this court constitute "sexual abuse of the child" which the Defendants "allow[ed] to be committed". Alternatively, as argued by the law guardian of the children, an "abused child" is

(4) ... a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, as herein defined, to exercise a minimum degree of care ... (b) in providing the child with proper supervision ... by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the Court.

[*N.J.S.A.* 9:6–8.21(c)(4)(b).]

Plaintiff and the law guardian advance this section of the statute as independent authority for entry of judgment, asserting that, consent of the child notwithstanding, the prior knowledge of the parents, tacit approval, and demonstrated encouragement of and for the sexual relationship constitutes a knowing and willful breach of the parental responsibility of Defendants to discourage, if not entirely prevent, such conduct by and between DW and her paramour at ages thirteen and nineteen respectively.

The court considers each argument separately:

### I. *N.J.S.A. 9:6–8.21(C)(3): Sexual Abuse.*

Clearly, the child, DW, was thirteen years of age as of the unsuccessful September 23, 1993, application before this court, seeking written waiver of the minimum age requirements for

marriage.  *N.J.S.A.* 37:1–6.  Equally clear is the fact that Defendant LW was aware, and had been aware for some time prior to that date, that her thirteen-year-old daughter had been engaging in sexual relations with CB:

> ... Her boyfriend is 19 ... there is a possibility a *child* is involved.  As her parent I feel the man is *capable of taking care of her* and the possible child ... I *strongly feel this way.*
>
> [DW] and [CB] are *living together now* ... I also feel *he will be good for her* ...
>
> ... *my husband* [Defendant RW] and his parents both *support their wishes* ...
>
> ... *they will also continue to live with my husband and I* ...
>
> [Certification of LW, *supra* (emphasis added.)]

The court thus finds that Defendants allowed the commission of the sexual relationship on an at-will basis during a period of time, extending through September 23, 1993, that DW and her paramour were "living together" in the home of the Defendants.  The issue remains:  does the parental allowance of the commission of such sexual conduct by a child constitute "abuse and neglect" by the parents?

The term, "sexual abuse", is not given statutory definition.  *N.J.S.A.* 9:6–8.21(c)(3) is not the focus of a single reported opinion; our reported common law is equally non-descript.  Black's Law Dictionary 24–25 (4th Ed.1968), defines "abuse" as:

> "Everything which is contrary to good order established by usage.  *Merl. Repert.*  Departure from use; in moderate or improper use ..."

### Female Child

> An injury to the genital organs in an attempt at carnal knowledge, falling short of actual penetration.  *Lee v. State,* 246 *Ala.* 69, 18 *So.*2d 706, 707.  But, according to other authorities, "abuse" is here equivalent to ravishment or rape.  *Palin v. State,* 38 *Neb.* 862, 57 *N.W.* 743.  Physical abuse.  *Montgomery v. State,* 28 *Ala.App.* 442, 186 *So.* 589, 592.

A more recognized and authoritative treatise states:

> The word "abuse" is not a term of art in the law and its every day popular sense is well known, *Erie & Northeast Railroad Co. v. Casey,* 26 *Pa.* 287, 318; but its proper signification when employed depends upon the context and subject matter, *Dawkins v. State,* [58 Ala. 376] *supra.;* misuse; *Erie & Northeast Railroad Co. v. Casey,* [26 Pa. 287] *supra* ...

When applied to a woman or a female child, the word "abuse" is used with references to sexual intercourse, and *characterizes an illegal rather than an honorable and proper relation*, *Miller v. State*, 79 So. 314, 315, 16 Ala.App. 534, 535.

[1 *C.J.S. Abuse* 391–392 (1985).]

Whether "contrary to good order" (*Merl. Repert, supra,*) "injury to the genital organs" (*Lee v. State, supra,*) "ravishment" (*Palin v. State, supra,*) "ill use or improper treatment" (*Dawkins v. State, supra,*) or "an illegal rather than an honorable and proper relation" (*Miller v. State, supra,*) be the accepted common law of "abuse", our statutory scheme, specifically, our Code of Criminal Justice, prohibits the very conduct which the parties stipulate to have occurred:

The second degree crime of sexual assault is defined, per *N.J.S.A.* 2C:14–2(c)(5) as: "an act of penetration with another person under ... the following circumstances:

(5) The victim is at least 13 but less than 16 years old and the actor is at least 4 years older than the victim."

In this case, DW was exactly thirteen years old; her paramour, CB, was nineteen years old. As such, a six-year age difference existed, and continues to exist, between the child and her paramour. The testimony and certification of Defendant LW on September 23, 1993, confirm her awareness of these facts as of and prior to that date.

Similarly, the fourth degree crime of criminal sexual contact is defined, per *N.J.S.A.* 2C:14–3(b), as: "an act of sexual contact with the victim under any of the circumstances set forth in section 2C:14–2(c)(1) through (5)" the latter of which is cited hereinabove.

The stipulated record clearly establishes that such conduct occurred by and between DW and CB, with prior knowledge and tacit consent of the Defendants. Parenthetically, the court notes that in any Chapter 14 prosecution, the defense of reasonable, mistaken belief by the actor as to the age of the victim is not available. *N.J.S.A.* 2C:14–5(c). Though the issue of mistaken belief is not before this court, this statutory provision provides

even further indication of the Legislature's clear intention to prohibit the conduct here acknowledged under *any* circumstances.

As such, the Legislature has clearly established the parameters of sound public policy as relates to lawful sexual conduct, the transgression of which must be deemed by this court to constitute "abuse" when such facts are applied to *N.J.S.A.* 9:6–8.21(c)(3). By "allowing the commission" of such "sexual abuse" upon their thirteen-year-old daughter, Defendants have thus "abused and neglected" the child, if only through their willful acquiescence to that conduct. Consent by the minor is irrelevant; parental encouragement by allowing the child and her paramour to "live together" in the parental home only increases the opportunity, indeed, the likelihood, for continued abuse and exacerbates the degree of neglect.

As the result of the foregoing analysis, this court is compelled to enter judgment of abuse and neglect in favor of the Plaintiff and against the defendants. Through their knowing and willful failure to guard their thirteen-year-old daughter against the physical and emotional consequences of the unlawful relationship with a nineteen-year-old adult, the Defendants have harmed the child to a degree that warrants such protective relief as sought in the complaint.

## II.   *N.J.S.* 9:6–8.21(c)(4)(b)

For the reasons set forth above, this court is equally compelled to find and conclude that the conduct of Defendants "allow[ed] . . . substantial risk" of "inflicted harm" to a degree prohibited by *N.J.S.A.* 9:6–8.21(c)(4)(b), as measured within the context of the public policy declarations of the Legislature in Title 14, as cited above. Judgment therefore enters in favor of the Plaintiff and against the Defendants pursuant to this statutory provision as well.